IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAUN S.,[1] | ) |
|         Plaintiff, | ) |
|      v. | ) No. 19 C 04545 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) Magistrate Judge Beth W. Jantz |
|         Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Shaun S.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Dkt. 12, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [Dkt. 21, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Kilolo Kijakazi has been substituted for her predecessor.

## BACKGROUND

### I. Procedural History

On August 9, 2016, Plaintiff filed a claim for DIB and SSI, alleging disability since February 1, 2014 due to major depression, bipolar disorder, and personality disorder. [R. 369.] Plaintiff's claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 8, 2018. [R. 315.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 336.] Vocational expert ("VE") Aimee Mowery also testified at the hearing. [R. 360.] On December 6, 2018, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. [R. 325.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

### II. The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 316-17.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 1, 2014 through his date last insured of September 30, 2015. [R. 317.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: depression and personality disorder. [R. 317.] The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 318-320.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels, with no limitation of his ability to lift

2

and/or carry, sit, stand or walk throughout an 8-hour workday. [R. 320.] The ALJ limited Plaintiff to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working on ladders, at unprotected heights, or around exposed flames or unguarded large bodies of water, and further indicated Plaintiff should avoid concentrated exposure to unguarded hazardous machinery such as a punch press and large robotic machinery. [R. 320.] The ALJ limited plaintiff to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. [R. 320.] Plaintiff also could not perform work involving multitasking, significant self-direction, or work with a significantly above average or highly variable production pace, but he could perform work requiring an average production pace. [R. 320.] Finally, the ALJ noted that plaintiff could not perform work involving direct public service, in person or over the phone, or work in crowded, hectic environments, but he could tolerate brief and superficial interaction with the public which is incidental to his primary job duties, as well as superficial interaction with co-workers and supervisors as is common in unskilled work. [R. 320.] Plaintiff could not perform teamwork or tandem tasks. [R. 320.] At step four, the ALJ concluded that Plaintiff would be unable to perform any past relevant work. [R. 324.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. [R. 324-25.]

## DISCUSSION

### I. Judicial Review

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

4

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

## II.     Analysis

Plaintiff makes four arguments challenging the ALJ's decision, including: (1) the ALJ's RFC assessment failed to accommodate Plaintiff's non-exertional deficits; (2) the ALJ improperly undermined Plaintiff's testimony regarding his subjective symptoms; (3) the ALJ erred in evaluating opinion evidence; and (4) the ALJ reflexively accepted unsupportable vocational expert testimony. After reviewing the record and the briefs submitted by the parties, this Court concludes that the ALJ erred in accounting for Plaintiff's non-exertional deficits in crafting the RFC. Because this failure alone warrants remand, the Court need not reach Plaintiff's additional arguments, though the Court does have concerns regarding other aspects of the ALJ's decision.

Plaintiff argues that the ALJ erred in crafting the RFC in two related, but distinct, ways. First, Plaintiff maintains that the ALJ improperly concluded that Plaintiff had only moderate—and not marked or extreme—limitations in interacting with others, concentration, persistence or pace, and adapting or managing himself. Second, Plaintiff argues that, even assuming he had only moderate limitations in those areas, the ALJ's RFC did not properly account for even moderate

5

limitations. The Court agrees that the ALJ's RFC did not adequately account for, at minimum, Plaintiff's limitations in concentration, persistence, and pace and adapting and managing himself.

With respect to concentration, persistence, and pace ("CPP"), the ALJ concluded that Plaintiff had a moderate limitation. In rejecting Plaintiff having more serious limitations, the ALJ noted that Plaintiff was able to drive during the relevant period, and that mental status examinations revealed that Plaintiff was alert and oriented to time, person and place, and that Plaintiff demonstrated good judgment and reason and fair attention and concentration. [R. 319.] The ALJ further explained that Plaintiff spent time reading and playing video games, which the ALJ indicated require some degree of focused thinking. [R. 319.] Accordingly, the ALJ limited Plaintiff to work that did not require multitasking, and also concluded that Plaintiff could perform work requiring an average production pace, but would not be able to perform work involving a significantly above average or highly variable production pace. [R. 319.]

The ALJ did not *explain how or why* he concluded that limitations on multitasking or an average production pace accounted for Plaintiff's moderate CPP limitations, however. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("[T]he ALJ did not explain how he arrived at these conclusions [regarding specific limitations]; this omission in itself is sufficient to warrant reversal of the ALJ's decision."). Indeed, the ALJ's decision to account for Plaintiff's CPP limitations with a limitation on multitasking appears at odds with the ALJ's use of Plaintiff's ability to drive—which the ALJ noted "requires the ability to multitask" [R. 319]—as evidence that Plaintiff has only moderate limitations. If Plaintiff had the ability to multitask, as the ALJ suggested, but nonetheless had moderate CPP limitations, it is unclear how or why a limitation on multitasking can account for Plaintiff's limitations.

6

Moreover, the restrictions the ALJ used to account for Plaintiff's CPP limitations are of the kind that the Seventh Circuit has repeatedly rejected as misdirected at concentration, persistence, and pace. "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). In this case, the ALJ's limitation on multitasking is akin to the "simple, repetitive tasks" limitation that there "is no basis to conclude" accounts "for problems of concentration, persistence, or pace," *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). Observing that an individual can perform simpler tasks "says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Id*. Nor is this the kind of case where the Seventh Circuit has ruled that a limitation to simple, non-stressful tasks appropriately accounts for the claimant's CPP limitations, as neither the ALJ nor the record suggested that Plaintiff's CPP difficulties only manifest when the Plaintiff is confronted with stressful tasks or in crowded settings. *Cf. Pytlewski v. Saul*, 791 F. App'x 611, 616 (7th Cir. 2019) (confining claimant to "simple, routine and repetitive tasks," "no fast-paced work," and "only simple, work-related decisions" was proper when applied to "a claimant with stress- or panic-related" limitations) (cleaned up); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (limitation to routine tasks and limited interactions with others was appropriate where claimant's "impairments surface only when with other people or in a crowd"); *see also Harry P. v. Kijakazi*, No. 19 CV 03107, 2022 WL 1541416, at *6 (N.D. Ill. May 16, 2022) (limitation to simple or routine work was insufficient where "there is no indication that Plaintiff's concentration, persistence, and pace issues arise solely from difficulty handling stress").

7

The other CPP restriction identified by the ALJ—that Plaintiff could perform work at an average production pace, but not at a highly variable or significantly above average rate—is likewise insufficient to account for Plaintiff's CPP limitations. The Seventh Circuit has repeatedly explained that restricting claimants from "fast paced" work or indicating the claimant may only engage in work with a "flexible pace" do not sufficiently apprise the vocational expert of the pace that a claimant is capable of working. *See Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015) ("It is also problematic that the ALJ failed to define 'fast paced production.' Without such a definition, it would have been impossible for the VE to assess whether a person with Varga's limitations could maintain the pace proposed."); *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019) ("[T]he ALJ's reference to 'flexible pace' is insufficient to account for Paul's difficulties maintaining focus and performing activities within a schedule, because the reference excludes only production-pace employment. Without more, the VE cannot determine whether someone with Paul's limitations could maintain the proposed pace or what the proposed pace even is.") (cleaned up). The ALJ's limitation in this case—that Plaintiff could perform work at an average pace, but not an above average or variable pace—likewise "does not shed any light on the actual speed of the non-variable pace required of Plaintiff." *Dawn W. v. Berryhill*, No. 17 CV 8998, 2019 WL 2327656, at *7 (N.D. Ill. May 31, 2019). "Indeed, even though the average production rate for a job presumably depends on the particular job at issue, there is no indication the VE assessed or considered any potential differences in the production rates for the various jobs he identified." *Id*. Accordingly, neither of the CPP restrictions identified by the ALJ were sufficient to account for moderate CPP limitations, as found by the ALJ.[3]

---

[3] The Commissioner also suggests that the other restrictions included in the mental RFC—such as those that account for Plaintiff's limitations in interacting with others—distinguish this case from those in which the Seventh Circuit has rejected an ALJ's CPP analysis. Def's Mot. at 8-9. Neither

A similar error permeates the ALJ's discussion of Plaintiff's limitations in adapting and managing himself. The ALJ concluded that Plaintiff had moderate limitations in adapting or managing himself, noting that Plaintiff denied mood swings or anger outbursts, routinely presented with a stable mood (and a pleasant disposition on occasion), and appeared dressed in clean clothing with fair personal hygiene. [R. 319.] The ALJ further noted that Plaintiff "endorsed difficulties with motivation and energy, which" the ALJ "considered in finding that the claimant was moderately limited in adapting and managing oneself."[4] [R. 319.] Based on that finding, the ALJ "limited the claimant to work which would not require significant self-direction." [R. 319.]

As with the ALJ's discussion of Plaintiff's CPP limitations, however, the ALJ did not provide any explanation for how a restriction from work requiring self-direction addressed Plaintiff's adaptation and management limitations, which the ALJ indicated were brought about by Plaintiff's difficulties with motivation and energy. *Briscoe*, 425 F.3d at 352 (failure to explain

---

the Commissioner nor the ALJ explain, however, how or why those other restrictions account for Plaintiff's CPP difficulties. And, as noted above, this is not a case in which the ALJ found (or the record supported) that Plaintiff's CPP limitations only manifested when Plaintiff was stressed or around other people, such that limitations related to interactions with others could also address Plaintiff's CPP limitations.

[4] Plaintiff's issues with energy and motivation were well-documented during the relevant period; indeed, they were perhaps Plaintiff's most consistently documented symptom. *See* R. 727 (Plaintiff is "depressed" and does not "know what [he] should be doing with [himself]"); R. 731 (Plaintiff needs "help with [his] mood" and is "still not able to really do anything"); R. 732 (Plaintiff reports that his energy is low and that he rarely leaves the house); R. 738 (Plaintiff is depressed and not able to do much); R. 740 (Plaintiff feels down and unmotivated, has low energy and motivation); R. 744 (plaintiff has not been able to do anything productive in his life in a very long time); R. 747 (plaintiff is really depressed and has no desire to wake up, has low energy); R. 759 (Plaintiff's functioning is the same, still has a lack of motivation, has low energy and fatigue); R. 763 (Plaintiff has no energy, no motivation); R. 774 (plaintiff has no motivation). The Court is concerned that the ALJ appears to have given short shrift to the numerous records from the relevant period—let alone those shortly before and after the relevant period—documenting the severity of Plaintiff's depression, including with respect to energy and motivation issues. The Court, however, need not assess whether the ALJ's consideration of the medical record rose to the level of impermissible cherry-picking, because the ALJ's crafting of Plaintiff's RFC requires remand for other reasons.

9

specific limitations is error). Nor is it apparent to the Court how a restriction against self-directed work accounts for issues of energy and motivation. Just as restricting an individual to simple work does not account for an individual's ability to concentrate or remain persistent or at pace for sustained periods of time, a restriction against "self-directed" work does not appear to account for an individual's ability to retain energy or motivation over the course of a workday (or in appearing for work consistently, and in a presentable manner). Especially absent any meaningful explanation of the restriction from the ALJ, the Court cannot say that the ALJ adequately accounted for Plaintiff's adaptation and management limitations brought about by his difficulties with energy and motivation.

Although the ALJ's failure to adequately account for Plaintiff's CPP and adaptation and management limitations warrants remand, the Court nonetheless mentions certain other concerns with the ALJ's opinion. The ALJ assigned limited weight to the opinion of an examining physician, Dr. James Gioia, on grounds that appear suspect. After examining Plaintiff, Dr. Gioia concluded that Plaintiff had primitive social/interpersonal skills and that Plaintiff does not appear to be capable of sustained concentration and persistence. [R. 796.] The ALJ rejected Dr. Gioia's opinions because he "examined the claimant once and his opinion appears to be based largely on the claimant's subjective allegations." [R. 323.] At the same time, however, the ALJ assigned great weight to the agency psychological consultant, Dr. Joseph Mehr, who *never* examined claimant and who based his assessment on a one-time review of Plaintiff's records, *including* Dr. Gioia's examining notes (which the ALJ expressly cited as a reason for assigning great weight to Dr. Mehr's opinions). [R. 323.] *See Paul*, 760 F. App'x at 464 ("[T]he ALJ wrongly discounted Dr. Powell's opinion for being based on a one-time examination when he gave 'great weight' to non-examining physician Dr. Pressner, whose opinion was *based on a one-time review* of Paul's

mental-health records (including a review of Dr. Powell's own examining notes).") "[T]he agency's regulations instruct that the medical opinion of an examining source, such as Dr. [Gioia], generally receives more weight than the medical opinion of a non-examining source, such as Dr. [Mehr]," absent a "good explanation for this unusual step." *Id*.

Nor do several of the other reasons the ALJ gave for rejecting Dr. Gioia's opinion appear to withstand scrutiny. The ALJ noted that Dr. Gioia's opinions were internally inconsistent in part because he described Plaintiff's social skills as primitive but also noted that Plaintiff's "overall speech was articulate and comprehensible" and that Plaintiff's "reality testing was intact." [R. 323.] It is unclear why clear and articulate speech and an understanding of reality undermine a finding of primitive social skills; that a person can talk and distinguish fact from fiction says little about the person's ability to socialize with others, other than that they meet the bare prerequisites for human interaction. *See, e.g., Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) ("This is just to say that the plaintiff is not a raving maniac who needs to be locked up.") (Posner, J.). Likewise, Plaintiff's ability to complete the examination is a thin reed on which to discount Dr. Gioia's opinions with respect to Plaintiff's ability to concentrate and persist. In short, the Court is not convinced that the ALJ had a "good explanation" sufficient to grant examining Dr. Gioia's opinions less weight than non-examining Dr. Mehr's opinions.[5]

Finally, the ALJ uncritically accepted the vocational expert's testimony that an individual with the RFC the ALJ assigned to Plaintiff could perform work as a cleaner of laboratory equipment, notwithstanding the restriction in the RFC against working in hazardous environments.

---

[5] Notably, the ALJ assigned great weight to Dr. Mehr's opinions in part because there was no opinion by a treating source that assessed greater limitations. [R. 323.] Presumably, that is also true of Dr. Gioia's evaluation, but the ALJ did not consider that as a reason to assign great weight to Dr. Gioia's opinions.

11

[R. 325.] Presumably, many laboratories include dangerous chemicals that could present a serious hazard to individuals like Plaintiff with severe depression, including a history of suicidal ideations and suicide attempts, *see, e.g.*, [R. 732, 760, 763, 774]. On remand, the ALJ should give more thoughtful consideration to the vocational expert's testimony regarding the jobs available to individuals with Plaintiff's limitations.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [12] is granted, and the Commissioner's motion for summary judgment [21] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 6/14/2022

BETH W. JANTZ
United States Magistrate Judge

12